FLESHMAN v. TROLINGER.—74 S. W. (2d) 1069.

Eastern Section. June 23, 1934.

Petition for Certiorari denied by Supreme Court, October 13, 1934.

Seiler & Hunter, of Elizabethton, for plaintiff in error.
Allen & Allen, of Elizabethton, for defendant in error.

FAW, P. J. The main question for decision on this appeal is whether or not James T. Trolinger was discharged from liability on a certain judgment by reason of his discharge in bankruptcy. The trial court held that the judgment was discharged, and the judgment creditor, Raymond Fleshman, administrator, etc., has appealed in error, and is insisting here (as he insisted below) that the judgment in question is a liability for "wilful and malicious injuries" inflicted by defendant in error Trolinger upon the person

of the intestate of plaintiff in error, and is, therefore, not dischargeable in bankruptcy.

Other incidental questions are raised by assignments of error, which will be mentioned later herein.

The facts which gave rise to the present controversy will be now briefly stated.

Mrs. Ida Garvin sued James T. Trolinger and his wife, Betty Trolinger, in the circuit court of Carter county, and on October 9, 1928, filed a declaration, in one count, which declaration reads as follows:

"Mrs. Ida Garvin, plaintiff, in the above action, sues the defendants, James T. Trolinger and wife, Betty Trolinger, who are both before the Court by writ of summons duly served upon them, for the sum of $5000 as damages, by reason of the following facts, to-wit:

"Count No. 1. The defendants, James T. Trolinger and wife, Betty Trolinger, on or about the 11th day of August, 1928, were the owners of a certain Chrysler automobile, Motor No. 83533A, with Tennessee License No. 274590, which on said date was being driven and operated by defendant, Mrs. Betty Trolinger, in the City of Elizabethton, Tennessee, on West 'G' Street (Elizabethton-Johnson City Pike) when the following described accident occurred:

"That on Saturday, August 11, 1928, at about 4:00 P. M., in the City of Elizabethton, Tennessee, the plaintiff, Ida Garvin, after looking carefully in both directions on 'G' Street and ascertaining that there were not any vehicles approaching her within a reasonable distance of where she was standing, started to walk in a straight line from the North Side of West 'G' Street to the South Side of said Street, as she had a right to do, and after reaching the center of said West 'G' Street, while using proper care and caution she continued to glance both to her right and to her left to be on the lookout for any cars that might be approaching her, saw a Chrysler automobile approaching her from her right and going in an easterly direction on said West 'G' Street at a very rapid and reckless rate of speed, and seeing that this car was approaching her at the rapid and reckless rate of speed as aforesaid, she began to run in a straight line the remaining distance from where she was at that time to the South Side of said West 'G' Street, and after getting all the way across the hard surface part of said street and going a distance of about eight feet further, she was struck, knocked down, dragged, run over, and seriously injured by said Chrysler automobile, Motor No. 83533A, Tennessee License No. 274590, owned by James T. Trolinger and wife, Betty Trolinger, and driven by said Mrs. Betty Trolinger. After striking the plaintiff, said Chrysler automobile owned and operated by said defendant continued on its way dragging the plaintiff with it, a distance of about eighteen feet and continuing on a distance of about ninety feet before coming to a stop. At the

time that the plaintiff was struck by said automobile, both the right wheel and left wheels of said automobile were entirely off of the right hand side of the hard surfaced road going East and were on that part of said road that is used for walking purposes by pedestrians. Said defendant's car was being driven carelessly, wantonly, and in excess of thirty miles per hour and, therefore, in violation of the Statute of Tennessee regulating the speed of vehicles on any highway, or road, the defendant is guilty of gross, wilful, wanton, malicious carelessness and recklessness in driving said car at an unlawful and illegal rate of speed.

"And that as a result of being struck, knocked down, run over and dragged by said car, plaintiff was thrown to the ground, bruised, mangled, cut, injured, frightened, shocked, and her life was so imperiled that she had to be taken to a hospital for treatment, where she remained for some time, and she was caused considerable expenditure for medicine, physicians' services and hospital bills, and was unable to attend to any of her duties or business for a great length of time, and the plaintiff is still suffering from the result of said accident as set out above, and for all of which plaintiff sues the defendants for damages in the sum of $5000 and demands a jury to try the issue."

On November 28, 1929, the defendants, Trolinger and wife, filed a plea of the general issue—not guilty.

On February 17, 1930, an order was entered of record from which it appears that the death of the plaintiff, Mrs. Ida Garvin, was suggested, proven, and admitted, and the cause was revived in the name of Raymond Fleshman, as administrator of the deceased plaintiff, Mrs. Ida Garvin.

It appears from the recitals of a judgment entered on March 17, 1930, that the cause was tried to a jury duly impaneled and sworn and the jury found the issues in favor of the plaintiff and assessed his damages at $1,500; that judgment of the court was thereupon entered in favor of the plaintiff and against the defendants, James Trolinger and Betty Trolinger, jointly and severally, for the sum of $1,500, together with interest from the date thereof, and all costs of the cause, for which execution was awarded and a lien was declared to exist in favor of the plaintiff on a certain described Chrysler automobile which had been attached at the inception of the suit. Judgment was also rendered against the sureties of the defendants upon a delivery bond which had been executed in the cause to secure the delivery of said automobile. A lien was declared on the said judgment for the reasonable fees of the plaintiff's attorneys.

The defendants, Trolinger and wife, moved for a new trial, but the trial court overruled the several grounds assigned in said motion, except the assignment that the verdict was excessive. The court suggested a remittitur of $500, which was accepted by the plaintiff

under protest and the judgment was thus reduced to $1,000. The plaintiff and the defendants, respectively, prayed and were granted appeals, but neither of the parties perfected an appeal.

The record contains an execution issued May 27, 1930, with a return of nulla bona thereon.

On August 26, 1931, James T. Trolinger filed a petition in bankruptcy in the District Court of the United States for the Northeastern Division of the Eastern District of Tennessee, and was duly adjudged a bankrupt. A second execution was issued on July 20, 1932, which bears a notation as follows:

"Garnishment July 22-1932 to Bemberg O. C. Crow, D. S."

On August 1, 1932, a conditional judgment was entered by the clerk of the circuit court as follows:

"The garnishee, American Bemberg American Glanzstoff Corporation, having failed to appear and answer the garnishment issued and served in the above cause and answerable before Hon. W. C. Ryan, Clerk of the Circuit Court of Carter County, Tennessee, on August 1, 1932, conditional judgment is entered against it for the sum of $1150, the amount of plaintiff's judgment against the defendants, and costs, and notice will issue accordingly. This August 1, 1932. W. C. Ryan."

Subsequently (on a date which does not definitely appear in the transcript), an order was entered as follows:

"In this cause came the garnishee, American Bemberg Corporation and American Glanzstoff Corporation, and moved the Court to set aside and vacate the conditional judgment heretofore entered against them in the amount of $1150 for alleged failure to answer a garnishment as required by law, and it appearing to the Court that the garnishees have shown good cause why said garnishment was not answered on the day set for the answer and further that on August 3, 1932, answer was made and the amount due paid into Court, it is accordingly order by the Court that said conditional judgment heretofore entered against the said American Glanzstoff Corporation and the American Bemberg Corporation in the sum of $1150, be set aside, vacated and for nothing further held. Nothing in this judgment contained shall be construed to prevent the plaintiff from objecting to the answer of garnishee defendant for further answer and examination, and the check for $41.74 placed in the hands of the Clerk with said answer is not released."

On December 20, 1932, a third execution was issued, and the return thereon is as follows:

"Came to hand 20 day of December, 1932. Executed by garnishment, American Bemberg-Glanzstoff Corp. Summoned to answer before W. C. Ryan, Clerk. 2/13/33. 8:30 A. M. A. C. Pierce, D. S."

On February 13, 1933, a conditional judgment was entered by the clerk of the circuit court as follows:

"The garnishee defendants, American Bemberg Corporation and American Glanzstoff Corporation, having failed to appear and answer the garnishment issued and served upon them in the above cause answerable before W. C. Ryan, Clerk of the Circuit Court for Carter County, Tennessee, on February 13, 1933, conditional judgment is entered against them jointly and severally for the sum of Fourteen Hundred eighty-eight and 26/100ths ($1488.26), the amount of the balance due on plaintiff's judgment, and costs, and notice will issue accordingly. This February 13, 1933. W. C. Ryan, Clerk."

On the same day viz., February 13, 1933, the defendant James T. Trolinger filed a motion as follows:

"Comes the defendant, James T. Trolinger, and moves the Court to quash the execution and dismiss the garnishment proceeding on the following grounds, that is to say, that heretofore, to-wit, on August 26, 1931, he was discharged in Bankruptcy in the United States District Court for the Northeastern Division of the Eastern District of Tennessee. Said discharge reads:

" 'It is, therefore, ordered by the Court that said James Thomas Trolinger be discharged from all debts and claims which are made provable by said Acts against his estate, and which existed on the 26th day of August, A. D. 1931, on which day the petition for adjudication was filed by him; excepting such debts as are by law excepted from the operation of a discharge in bankruptcy.'

"See Certified Copy of discharge filed herewith as Exhibit 'A.'

"Plaintiff avers that the judgment on which said execution issued was listed by defendant as one of the creditors whose claims were unsecured and is not such a debt as is by law excepted from the operation of a discharge in bankruptcy, and that therefore said judgment has been discharged and the defendant is not liable on said judgment. The schedule in which said judgment is listed is filed herewith as Exhibit 'B' to this motion.

"Wherefore, plaintiff prays that said execution be quashed and the garnishment served in connection therewith be dismissed."

Exhibit A to the foregoing motion (described therein as "certified copy of discharge") is a decree or judgment of the District Court of the United States for the Northeastern Division of the Eastern District of Tennessee, duly certified according to the act of Congress and in conformity with the Code of Tennessee, sections 9754-9756. The recitals and operative parts of said decree are as follows:

"Whereas, James Thomas Trolinger, of Elizabethton, in said District, has been duly adjudged a bankrupt, under the Acts of Congress relating to bankruptcy, and appears to have conformed to all the requirements of law in that behalf.

"It is, therefore, ordered by the Court that said James Thomas Trolinger be discharged from all debts and claims which are made

provable by said Acts against his estate, and which existed on the 26th day of August, A. D. 1931, on which day the petition for adjudication was filed by him; excepting such debts as are by law excepted from the operation of a discharge in bankruptcy."

The "schedule," Exhibit B, to the aforesaid motion to quash, etc., was filed without formal certificate, but with a stipulation by counsel that it "is a true and perfect copy of the schedule filed in said bankruptcy proceeding, by the bankrupt, James Thomas Trolinger, and that the same may be used in place of a certified copy in the case of R. M. Fleshman, administrator, v. James Trolinger, et ux., in the Circuit Court, Elizabethton, Tennessee."

Said schedule included the judgment in question as an "unsecured" claim against the bankrupt, James T. Trolinger.

On April 10, 1933, a motion was filed on behalf of the plaintiff Raymond M. Fleshman, administrator, as follows:

"Comes the plaintiff and moves to dismiss the defendant's motion in this cause to dismiss the garnishment proceedings to collect the judgment in this case, and for grounds shows the following:

"1. That defendant has not properly and according to law proved this discharge in bankruptcy, or presented satisfactory evidence to show his discharge.

"2. That the judgment against the defendant, James T. Trolinger, is not a dischargeable debt in bankruptcy, for the reason that it is a judgment for wilfully, maliciously, recklessly and negligently causing bodily injury to the plaintiff's intestate causing her death.

"3. Exceptions or objections to the garnishment proceedings and the defense to the collection thereof are triable only in the United States District Court of Bankruptcy, and therefore this court does not have jurisdiction to try the legal question raised by defendant's motion.

"For these and other reasons to be shown at the hearing plaintiff moves the court to dismiss defendant's motion and allow the garnishment to stand."

We may say, in passing, that a motion by one party to dismiss a motion of his adversary is a rather anomalous procedure. The motion of the administrator last quoted is, in substance, a reply to Trolinger's motion of February 13, 1933, and it was seemingly so treated by the trial judge.

The cause was finally heard on Trolinger's motion of February 13, 1933, to quash the execution and dismiss the garnishment proceedings, and thereupon the judgment of the court was entered as follows:

"This cause came on to be heard before the Honorable D. A. Vines, Circuit Judge, on April 25, 1933, upon the motion of the defendant, James T. Trolinger, to quash the execution and dismiss the garnishment proceedings on the ground that the defendant had

been discharged in bankruptcy in the United States District Court, and the defendant appeared and resisted said motion on the ground that the judgment in this cause was not such as could be discharged under the provisions of the bankruptcy law and upon consideration of the record in said cause and the oral testimony of the defendant, James T. Trolinger, and his wife, Mrs. James T. Trolinger, and the premises being seen and understood by the Court, the Court is of the opinion that said debt was dischargeable in bankruptcy, and that the plea of such discharge is well taken, and should be sustained.

"It is therefore considered by the Court that the motion of the said defendant, James T. Trolinger, be sustained and that the execution be quashed and the garnishment proceedings dismissed."

A motion for a new trial on behalf of the plaintiff administrator was overruled, and he thereupon reserved exceptions to the action of the court in overruling his motion for a new trial and rendering judgment against him, and prayed an appeal to this court, which was granted by the trial court and perfected by him.

1. As stated in the outset of this opinion, the main question for determination is whether or not the aforesaid decree of the United States District Court, discharging James Thomas Trolinger from all provable debts and claims against his estate, existing at the date of his adjudication in bankruptcy (August 26, 1931), operated to discharge him from liability on said judgment of the circuit court of Carter county in favor of the plaintiff administrator.

The plaintiff's contention is that the jury's verdict in favor of the plaintiff upon the issues made by the declaration and plea in the action for damages necessarily implied that the defendants, Trolinger and wife, willfully and maliciously injured the person of plaintiff's decedent, Mrs. Garvin; and plaintiff invokes the second subdivision of section 17a of the Federal Bankruptcy Act of 1898, as amended in 1903 and 1917 (11 U. S. C. A., sec. 35), which provides that a discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as are "liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another, or for alimony due or to become due, or for maintenance or support of wife or child, or for seduction of an unmarried female, or for breach of promise of marriage accompanied by seduction, or for criminal conversation."

 Having thus invoked the statute, the burden was upon the plaintiff administrator to show that the judgment in question was within one of the classes of liabilities exempted from discharge. Numerous authorities which, in effect, so hold, are collated in an annotation found in 2 A. L. R., page 1672 et seq., and the annotator there says: "The decided weight of authority is to the effect, generally, that after a bankrupt has made out a prima facie defense to

a suit based upon an obligation existing at the time of filling out the petition in bankruptcy, by the introduction in evidence of the order of discharge in bankruptcy which is presumed to cover all his debts, the burden is then not upon the defendant, but is cast upon the plaintiff, of showing that such discharge is not operative as to his claim.''

Moreover, as the exceptions tend ''to impair the bankrupt's remedy, the Statute being highly remedial, these exceptions should be so construed as to affect that remedy only so far as is necessarily required by its express terms.'' Collier on Bankruptcy (13 Ed.), p. 619.

A judgment for personal injuries caused by *negligence* of the judgment debtor is provable in bankruptcy. Lewis v. Roberts, 267 U. S., 467, 45 S. Ct., 357, 69 L. Ed., 739, 37 A. L. R., 1440 (Annotated).

''A judgment for damages arising out of an automobile accident is discharged, unless it is shown that it was caused by the willful and intentional act of the defendant in reckless disregard of the rights of the plaintiff.'' Collier on Bankruptcy (13 Ed.), p. 622.

This brings us to the question: What are ''willful and malicious injuries to the person and property of another?'' The authorities all agree that, to come within the exception here involved, the injuries must have been *both* willful and malicious.

The meaning of this exception was considered by the court in Tinker v. Colwell, 193 U. S., 489, 24 S. Ct., 505, 508, 48 L. Ed., 761, which involved the question of the dischargeability in bankruptcy of a judgment for damages for criminal conversation. (This case arose prior to the amendment specifically exempting liabilities for ''criminal conversation'' from discharge.) With reference to the definition of ''willful and malicious,'' as those terms are used in section 17a of the Bankruptcy Act (11 U. S. C. A., sec. 35), the court made the following pertinent observations:

''In order to come within that meaning as a judgment for a willful and malicious injury to person or property, it is not necessary that the cause of action be based upon special malice, so that without it the action could not be maintained. . . . Malice, in common acceptation, means ill will against a person; but in its legal sense it means a wrongful act, done intentionally, without just cause or excuse. . . . It is urged that the malice referred to in the exception is malice towards the individual personally, such as is meant, for instance, in a statute for maliciously injuring or destroying property, or for malicious mischief, where mere intentional injury without special malice towards the individual has been held by some courts not to be sufficient. Com. v. Williams, 110 Mass., 401.

''We are not inclined to place such a narrow construction upon the language of the exception. We do not think the language used

was intended to limit the exception in any such way. It was an honest debtor, and not a malicious wrongdoer, that was to be discharged. . . .

"It is not necessary in the construction we give to the language of the exception in the statute to hold that every wilful act which is wrong implies malice. One who negligently drives through a crowded thoroughfare and negligently runs over an individual would not, as we suppose, be within the exception. True, he drives negligently, and that is a wrongful act, but he does not intentionally drive over the individual. If he intentionally did drive over him, it would certainly be malicious. It might be conceded that the language of the exception could be so construed as to make the exception refer only to those injuries to person or property which were accompanied by particular malice, or, in other words, a malevolent purpose towards the injured person, and where the action could only be maintained upon proof of the existence of such malice. But we do not think the fair meaning of the statute would thereby be carried out. The judgment here mentioned comes, as we think, within the language of the statute, reasonably construed."

The case of Tinker v. Colwell, supra, seems to be the leading case on the interpretation of the exception upon which plaintiff is relying in the instant case. Other cases on the subject are digested in 57 A. L. R., pages 153-155, in an annotation on the subject of "what constitutes wilful and malicious injury growing out of automobile accident within provision of bankruptcy act relating to discharge."

The next question is: How are we to determine whether or not the injuries to the person of Mrs. Ida Garvin, for which her administrator recovered the judgment in this case, were wilfully and maliciously inflicted by the defendant James T. Trolinger?

In 2 Loveland on Bankruptcy, sec. 763, it is said:

"Whether the act was wilful and malicious must be determined by the record of the Court in which the judgment was recovered. It is a question of law for the Court, and should not be submitted to a jury."

We must, therefore, ascertain whether or not the verdict of the jury and the judgment of the court thereon, when taken in connection with the pleadings upon which they were based, necessarily constitute an adjudication that defendant James T. Trolinger willfully and maliciously injured the person of Mrs. Garvin.

It is averred in the declaration, hereinbefore copied in full, that the plaintiff (then Mrs. Ida Garvin) was struck, knocked down, dragged, run over, and seriously injured by a described Chrysler automobile, which automobile was owned by the two defendants, James T. Trolinger and Betty Trolinger, and which was driven and operated at the time by said Betty Trolinger; that said automobile was coming "at a very rapid and reckless rate of speed;" that

"said defendants' car was being driven carelessly, wantonly, and in excess of 30 miles per hour and, therefore, in violation of the statutes of Tennessee regulating the speed of vehicles on any highway or road, the defendant is guilty of gross, wilful, wanton, malicious carelessness and recklessness in driving said car at an unlawful and illegal rate of speed."

Did the finding for the plaintiff upon the issues thus presented by the declaration (which were denied by defendants' plea) necessarily imply that defendant James T. Trolinger willfully and maliciously ran down and injured Mrs. Garvin?

In the first place, it is seen, from an inspection of the declaration, that it is nowhere averred therein that defendant James T. Trolinger was in the automobile at the time it struck Mrs. Garvin. The sole averment in the declaration which connects James T. Trolinger with the transaction is the averment that he and his wife were the owners of the offending automobile. Neither the evidence heard by the jury nor the charge of the court to the jury are in the record, and we cannot assume that the jury found that defendant James T. Trolinger was in the automobile at the time it injured Mrs. Garvin, when there is no averment to that effect in the declaration. For this reason, we do not think that the declaration contains an averment that defendant James T. Trolinger willfully (that is, intentionally) drove the car upon and against Mrs. Garvin. Tippett v. Sylvester (N. J. Sup.), 127 Atl., 321.

But, aside from the proposition just stated, we do not think that there is anything in the declaration which amounts to an averment that the driver of the car, Betty Trolinger, intentionally and maliciously injured Mrs. Garvin. The averments that the car was going at a very rapid and reckless rate of speed, and that it was "being driven carelessly, wantonly, and in excess of thirty miles per hour and, therefore, in violation of the statute of Tennessee regulating the speed of vehicles on any highway or road," do not connote an intention to injure Mrs. Garvin or any one else.

The averment that "the defendant is guilty of gross, wilful, wanton, malicious carelessness and recklessness in driving said car at an unlawful and illegal rate of speed" is merely the statement of the pleader's conclusion that "in driving said car at an unlawful and illegal rate of speed," the "defendant" was (as a matter of law) "guilty of gross, wilful, wanton, malicious carelessness and recklessness."

It does not follow from the fact that the car was driven at a rate of speed in violation of the statute of Tennessee regulating the speed of any vehicle on a highway or road that the injuries to Mrs. Garvin were willfully inflicted. This court held, in the case of Saucier v. Roberts, 2 Tenn. App., 211, 216, that an automobilist is not necessarily guilty of "wilful misconduct" by operating his car in viola-

tion of the statute fixing a speed limit, and that "a violation of the commands of a statute of this class, causing personal injury to another, is not to be treated as a wilful injury, as a matter of law."

In Ely v. O'Dell, 146 Wash., 667, 264 Pac., 715, 57 A. L. R., 151, it was held that injury negligently caused by an automobilist while driving a car in a manner violating municipal ordinances is not within the provision of the Bankruptcy Act denying discharge from liabilities arising from willful and malicious injuries to the person or property of another.

■ Excessive speed, though willful, does not imply malice. In re Kubiniec (D. C.), 2 F. Supp., 632.

The only case cited in the Thirteenth Edition of Collier on Bankruptcy, supra (page 622), in support of the statement that a judgment for damages arising out of an automobile accident is not dischargeable in bankruptcy, if it was "caused by the wilful and intentional act of the defendant in reckless disregard of the rights of the plaintiff," is Re Cote, 93 Vt. 10, 106 Atl. 519, 44 A. B. R., 43; but we do not regard that case as in point here, for the reason that the judgment of the trial court in the damage suit there involved contained an adjudication that the cause of action on which the judgment was founded arose from the willful and malicious act of the judgment debtor.

In the instant case, there is not even an intimation in the record that the verdict included punitive damages. The amount of damages assessed by the jury ($1,500) and the suggestion by the trial judge of a remittitur of $500 from that sum suggests the contrary.

In our view of the record, the question of whether or not the defendants, or either of them, willfully and maliciously injured Mrs. Garvin was not an issue for the jury in the trial of the damage suit. We, therefore, concur in the finding of the circuit court that the judgment in question was a provable claim, and that James T. Trolinger was released from liability thereon by his discharge in bankruptcy.

2. On the hearing of the motion of defendant James T. Trolinger to quash the execution and dismiss the garnishment, the trial court, over the objection of plaintiff, admitted certain oral testimony of James T. Trolinger and Betty Trolinger, and this action of the trial court is assigned as error. This testimony and the proceedings below with respect to same appear in the bill of exceptions as follows:

"The defendants, by counsel, requested leave of the Court to introduce James T. Trolinger and wife, Betty Trolinger, the defendants, as witnesses to give oral testimony. The plaintiff, by counsel immediately objected to same on the ground that the record was already made up and that the motions presented questions of law and that the introduction of testimony was improper in support of said motions, and especially at this time after the cause had been tried and the verdict of the jury entered.

"The Court overruled said objections and allowed the witnesses to give oral testimony, to which action of the Court the plaintiff saved exceptions.

"The witness, James T. Trolinger, testified that he was riding in the automobile with his wife at the time plaintiff's intestate was struck by said automobile and that the witness did not know the deceased, Mrs. Ida Garvin, and entertained no malice toward her whatsoever, because he did not know her and could not entertain malice toward plaintiff's intestate.

"The co-defendant of said James T. Trolinger, Betty Trolinger, also testified that she was driving the car at the time of the accident and that she did not know plaintiff's intestate, Mrs. Ida Garvin, and that she had no malice or ill will toward her whatsoever and could not entertain any malice or ill will because she did not know her. That she applied the brakes and did all she could to prevent the accident.

"The plaintiff, by counsel, again objected to the consideration of said testimony on the ground that the declaration charged the defendants with being guilty of gross, wilful, wanton, malicious carelessness and recklessness in driving said car at an unlawful and illegal rate of speed and that the verdict of the jury shows that it found the issues in favor of the plaintiff and, therefore, no testimony could be heard by the Court at this time which would affect the verdict of the jury and the judgment of the Court thereon. This motion was again overruled and the plaintiff saved exceptions."

■ We have heretofore, in this opinion, approved the rule stated in 2 Loveland on Bankruptcy, sec. 763, p. 1364, that "whether the act was wilful and malicious must be determined by the record of the Court in which the judgment was recovered. It is a question of law for the Court and should not be submitted to a jury."

In Collier on Bankruptcy (13 Ed.), p. 617, it is said:

"Where a liability against a bankrupt has been prosecuted to judgment, the record is decisive as to the character of the claim upon which the judgment is founded and cannot be affected by oral evidence except in case of ambiguity."

"Judgment is conclusive upon the debtor as to the facts necessarily involved in the verdict." McChristal v. Clisbee, 190 Mass., 120, 76 N. E., 511, 3 L. R. A. (N. S.), 702, 703, 5 Ann. Cas., 769.

■■ We are of the opinion that it was error to admit the testimony of James T. Trolinger and Betty Trolinger on the hearing of the motion; but we are also of the opinion that it was not reversible error upon this record for the reason that it did not affect the result.

By Pub. Acts of 1911, chapter 32, carried into the Code as section 10654, we are forbidden to reverse the judgment of a trial court "on account of the improper admission or rejection of evidence" unless, in our opinion, after an examination of the entire record in

the cause, it affirmatively appears that the error complained of has affected the result of the trial.

In reaching our conclusion that the trial court did not err in adjudging that defendant James T. Trolinger was released from liability on the judgment in question by his discharge in bankruptcy, we have ignored the aforesaid testimony of James T. Trolinger and Betty Trolinger. The entire tenor and effect of said testimony was merely confirmatory of the conclusion that the court should, and presumably would, have reached upon the record if the testimony had not been admitted. The general rule is that where a case has been tried by the circuit judge without a jury, the appellate court will render such judgment as the trial court should have rendered. Sledge v. Hunt, 157 Tenn., 606-612, 12 S. W. (2d), 529.

3. Through an assignment of error the plaintiff says that:

"The Court erred in failing and refusing to sustain plaintiff's motion for a judgment on the garnishment proceedings against American Bemberg-Glanzstoff Corporations on the ground that said garnishment defendants failed to answer under oath, as required by law, the garnishment notice served upon them by the Deputy Sheriff, and the Court erred in declining to render judgment against said garnishment defendants based upon their failure to answer under oath said garnishment notice."

The Code, section 8947, provides that "the garnishee may be required to answer on oath;" but it does not appear from the record in the instant case that the plaintiff made any objection to the answer of the garnishee, on the ground that it was not on oath—in fact, there was no motion to strike the answer or to have the garnishee summoned before the court for a further answer. This was a waiver of the oath to the garnishee's answer.

In principle, this ruling is supported by the cases of Wilson v. Eifler, 7 Cold., 31, and Seifred v. People's Bank, 1 Baxt., 200, wherein the court held that unsworn pleas in abatement would not be stricken in the absence of objection to their verification, prior to the hearing.

4. Plaintiff asserts, through an assignment of error, that the federal courts alone have jurisdiction to determine the legal question raised by the motion to quash the execution in this case, and that, therefore, the circuit court of Carter county was without jurisdiction of the matters adjudicated by the judgment now under review. We hold otherwise. We are not aware of any authority supporting this assignment. The case of In re Mustin (D. C.), 165 Fed. 506, is not in point.

5. The remaining assignment of error is that:

"The Court erred in not sustaining plaintiff's motion for a judgment on the ground that the question of garnishment was res adjudicata since a former garnishment judgment had been taken against

these same defendants in this same case, and that no exceptions or objections had been filed to same and the former garnishment judgment was paid by these same garnishee defendants. Therefore, the question of garnishment against the garnishee defendants is now res adjudicata as the question on the right to garnishee has heretofore been settled and determined by the Court. The Court should have held that this same question, between the same parties, was settled by a former adjudication and that, therefore, the garnishment proceedings could not now be attacked by the defendants.''

Presumably this assignment related to the collection of $47.14 by garnishment under the second execution hereinbefore mentioned.

The record does not show that defendant James T. Trolinger had notice or knowledge of said garnishment and the collection of $47.14 thereby. But, whether he knew of said garnishment or not, it is, we think, a sufficient answer to this assignment to say that it does not appear from the record that this question of res adjudicata was raised in any manner, at any time, in the trial court, and it, therefore, cannot be raised on appeal. 2 R. C. L., p. 69, par. 52.

6. It results that the assignments of error are all overruled and the judgment of the circuit court, quashing the execution and dismissing the garnishment, is affirmed, and judgment will be entered here accordingly. The costs of the appeal will be adjudged against the plaintiff administrator.

If desired by either party, the cause may be remanded to the circuit court of Carter county for the proper disposition of the funds in the hands of the clerk of that court.

Crownover and DeWitt, JJ., concur.