GRACE LANNA *vs.* SOPHIE KONEN ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued March 5th—decided April 3d, 1935.

*John Clark FitzGerald,* with whom, on the brief, were *David E. FitzGerald, Jr.,* and *Ellsworth B. Foote,* for the appellant (defendant).

*James M. Kelly,* with whom was *Harry M. French,* and, on the brief, *Arthur B. O'Keefe* and *Douglas B. Johnson,* for the appellee (plaintiff).

HAINES, J.  The named defendant and her husband, Paul, were on December 13th, 1933, living together in a dwelling-house on premises known as 592 Ardale Street, West Haven, the legal title to which stood in the name of the wife, and both defendants were in possession and control thereof.  About two years previous to the date named, Paul purchased an overgrown, large-sized mongrel dog, apparently part german police and part collie.  The household duties were performed by the wife without servants, and when the husband worked he was away from home early in the morning to the middle of the afternoon.  The dog was fed and cared for by both defendants and was sometimes kept in a dog house tied up by a chain and sometimes allowed to run at large.  Both defendants controlled the location and movements of the dog, and it habitually responded to the call of the wife.  Both defendants, on occasions, had had the dog with them on the public streets.

On the date named, about a quarter past six in the evening, the dog had been loose in the yard, and for some unexplained reason, bit the hand of Paul and

then rushed into the public street in front of the defendants' home and attacked the plaintiff, a girl of fifteen, who was on her way from school to her home at 335 Ardale Street. She was severely bitten on various parts of her body. The defendant Sophie, hearing the plaintiff's screams, went out onto the porch and called the dog, which at once responded to her call and left the plaintiff. Shortly thereafter this defendant went to the home of a neighbor and obtained his services to take Paul and the plaintiff to a doctor or a hospital, saying to the neighbor, in substance, "my dog has bitten Lanna's daughter." Previous to this date, this defendant in conversation with the plaintiff's sister had referred to the dog as "my dog," and again, while on the stand during the trial of this case, had used the same expression. The dog was not registered, and after it had again attacked Paul following the attack on the plaintiff, he killed it. The plaintiff, when attacked, was not committing any trespass or other tort and did nothing to tease, torment or abuse the dog.

All the assignments of error made by the appellant are directed to a single controlling issue. She claims to be without liability to the plaintiff for the reason that she was not the "owner or keeper" of the dog within the meaning of our statutes. "If any dog shall do any damage to either the body or property of any person, the owner or keeper, or, if the owner or keeper be a minor, the parent or guardian of such minor, shall be liable for such damage, except when such damage shall have been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog." General Statutes, Cum. Sup. 1933, § 938b. "Keeper" shall mean any person, other than the owner, harboring or having

in his possession, any dog. General Statutes, Cum. Sup. 1933, § 916b.

Of the various claims for correction of the finding, only one is of consequence. The trial court found that Paul purchased the dog for the pleasure and protection of the family, and intended that it should belong to himself and his wife jointly. We are unable to find in the evidence any direct statement or proper inference to support the view that the defendant Paul intended to vest ownership in the sense of legal title to the dog, in his wife as well as himself, and the conclusion that the dog was jointly owned by them in that sense, cannot stand. But there is testimony that, for two years, the dog had been kept and cared for by both defendants; that the wife had had and exercised a joint control of the dog with the husband, feeding, tying, untying and generally controlling its movements, and had trained it to come at her call, and spoke of it to others as "my dog." From this and other evidence, the conclusion that both defendants harbored and kept the dog, is fully justified, and the inference that it was bought for the pleasure and protection of the family is not an unreasonable one. These conclusions fully support the decision of the trial court that both defendants are liable to the plaintiff in this action. We observe that the defendants' brief attacks and discusses by reference to the evidence, two paragraphs of the finding which are in no way referred to in the assignments of error. These of course cannot be considered by us.

The only case heretofore decided by this court in which the contention now made by the appellant can be said to have been considered, is that of *McCarthy* v. *Daunis* (1933) 117 Conn. 307, 167 Atl. 918. The record of that case in this court shows that the plaintiff was bitten by a dog which had been bought by the

defendant Paul Daunis in the spring of 1931, and taken to the home occupied by himself and wife; that on February 7th, 1932, when the plaintiff was bitten by the dog, the premises were owned by the wife Theresa; that the dog was fed and cared for and was under the control and in the custody of both defendants; that the dog had been registered in Naugatuck before Paul Daunis bought it, in the name of one Gudiskas, but had never been registered in Waterbury, the home of the defendants; that in September, 1931, the Gudiskas came to the home of the defendants, and at the time of the injury to the plaintiff were occupying apartments jointly with them. In holding the defendants Daunis liable in that case, we said (p. 309) that "one who treats a dog as living at his house and undertakes to control his actions is the owner, keeper, or harborer as affecting liability for injuries caused by it." The factual background of the *McCarthy* case closely parallels that of the present one, and the cases cannot be successfully distinguished in principle.

We cannot say that the legal title to this dog is shown to have been held jointly by these defendants, but it is too clear for successful contradiction that both possessed and harbored it and fed and controlled it, bringing the wife strictly within the definition of "keeper" as that term is used in the statutes, i. e. a "person, other than the owner, harboring or having in his possession," the dog. The case of *Burch* v. *Lowary*, 131 Iowa, 719, 109 N. W. 282, upon which the appellant relies, involved a statute of that State which differs from our own, requiring proof that the defendant harbored the dog "as owners usually do." We do not know all the facts of that case, and it is unnecessary to attempt to point out controlling distinctions of fact and of statutory terms in the decisions of other states, since our own statute has already had a judicial con-

struction here. Though the decisions are in some conflict, the reasoning of the *McCarthy* case and the theory upon which our statute is framed, finds ample support in other jurisdictions, as shown by the following cases, among others: *Quilty* v. *Battie,* 135 N. Y. 201, 32 N. E. 47; *Barrett* v. *Malden & Melrose R. Co.,* 85 Mass. (3 Allen) 101; *Cummings* v. *Riley,* 52 N. H. 368; *Hornbein* v. *Blanchard,* 4 Colo. App. 92, 35 Pac. 187; *McLain* v. *Lewiston Interstate Fair & Racing Asso.,* 17 Idaho, 63, 94, 104 Pac. 1015, 25 L. R. A. (N. S.) 691; *Wood* v. *Campbell,* 28 S. D. 197, 132 N. W. 785, Amer. & Eng. Anno. Cas. 1914B, 605. See also *Camp* v. *Rogers,* 44 Conn. 291, 298; 3 C. J. p. 107, § 347, and cases cited. The decision of the trial court is sustained.

There is no error.

In this opinion the other judges concurred.