Argued March 29; affirmed May 9, 1944

JACO *v.* BAKER ET AL.

(148 P. (2d) 938)

192

Before BELT, Acting Chief Justice, and ROSSMAN, KELLY, LUSK and BRAND, Associate Justices.

*George J. Perkins,* of Portland (Andrew Hansen, of Portland, on the brief), for appellant.

*Charles W. Robinson,* of Portland (Alfred Keller, of Portland, on the brief), for respondent.

KELLY, J.

This is an action to recover for injuries sustained by being bitten by a vicious dog, in which action a judgment was rendered in favor of plaintiff and against defendants; whereupon defendants secured adjudications of bankruptcy and discharges of their indebtedness, and, based thereon, moved the trial court for an

order authorizing and directing the clerk of said court to enter a satisfaction of said judgment. Plaintiff filed an affidavit opposing defendants' motion and defendants moved to have plaintiff's affidavit stricken from the files. The trial court denied defendants' motions, whereupon defendants moved for an order setting aside and vacating the trial court's order denying said motions and granting a new trial or hearing upon said motions which last mentioned motion was also denied. From the orders denying defendants' several motions, as above stated, defendants appeal.

KELLY, J.

On August 1, 1941, plaintiff by her guardian *ad litem* filed in the circuit court in and for Multnomah County a complaint alleging:

"I

That plaintiff is a female child of five years of age, living with her parents at 6917 North Atlantic Avenue, in the City of Portland, Oregon.

II

That heretofore the above named Orville C. Jaco was duly appointed by the above entitled Court as guardian of the above named Alice Marie Jaco for the purposes of this action.

III

That at all times herein mentioned the defendants Harvey Baker and Mary Baker have been and are now the keepers, and defendant Dean Baker, at all times herein mentioned has been and is now the owner of a certain dog, to-wit:—a large Collie dog.

IV

That said dog is and at all times herein mentioned has been of a vicious character; that said

dog has now, and at all times herein mentioned has had a vicious propensity of attacking and biting persons, particularly children.

### V

That said defendants have at all times herein mentioned well known, and do now well know, of such vicious propensity of said dog.

### VI

That on the 8th day of July, 1941, said dog, being totally unrestrained and unenclosed did, in the day time, viciously attack and bite said plaintiff, while plaintiff was at play upon the public sidewalk at or near the said premises of 6917 North Atlantic Avenue, Portland, Oregon, the home of said plaintiff. That said dog did thereby inflict grievous wounds upon the face of plaintiff.

### VII

That as an immediate and proximate result of said vicious attack, plaintiff has suffered the heretofore mentioned injuries to her face and has suffered physical pain, s h o c k, fright and mental anguish, and has sustained a permanent and disfiguring scar upon her face, all to plaintiff's damage in the sum of $10,000.00.''

And also alleging special damages in the sum of $50.00 for medical bills and that $1,500 is a reasonable amount to allow plaintiff as punitive damages.

In their amended answer defendants admitted paragraphs I and II and denied all the other allegations of plaintiff's complaint except that defendants admitted that defendant Dean Baker was the owner and keeper of said dog mentioned in paragraph III of plaintiff's complaint.

The trial court instructed the jury *inter alia,* that in order ''to hold Mr. and Mrs. Harvey Baker you would have to find that they did keep and harbor the dog at that time.''

And the court further instructed the jury as follows:

" * * * * having found the other issues in favor of the plaintiff that have been suggested to you, if you find that they did so harbor and keep the dog, you would still have a fourth question or issue upon which to pass, and that is this: Did the defendants, that is, Dean Baker, Harvey Baker, or Mary Baker, or any of them know, or were they or any of them on notice that the dog had, if you have already found that he did have, a mischievous or playful disposition or propensity to bite people. You will examine into the knowledge or lack of knowledge of each of the three defendants separately concerning the character of the dog. If as to any of the defendants you find that he or she did not actually know of any such disposition,—of course you would have previously to have found such disposition in order to reach this issue at all —that they did not actually know of any such disposition on the part of the dog but knew of facts tending to arouse suspicions and to invite investigation, and if you also think that the investigation of these facts would have led such defendant to actual knowledge of the disposition or propensity on the part of the dog, in such event such a defendant would be chargeable by you with the equivalent of full knowledge of that character or disposition.

Now if you answer this fourth question in the negative as to any defendant - - - that is, if you find as to any defendant that he or she did not know or was not on notice of any such disposition or habit or propensity on the part of the dog, then you would have to find a verdict for that defendant. If, on the other hand, you answer this fourth question in the affirmative as to any defendant, if you find that as to any defendant that he or she did know or was on notice of any such disposition or habit or propensity on the part of the dog, then

you would find a verdict for the plaintiff against that defendant."

The trial court withdrew from the consideration of the jury plaintiff's claim for punitive damages, by giving the following instruction:

"Also, you are not permitted to allow in this case any part of the sum of $1500.00 asked as punitive damages. I needn't go into the detail of that except to say that that reason is entirely legal. This is not the kind of case which permits the assessment of punitive damages."

Omitting the title, the verdict returned by the jury is as follows:

"We, the jury, in the above entitled action, find in favor of the plaintiff and against the following defendants, Harvey Baker, Mary Baker, Dean Baker and assess plaintiff's damage at $2500.00

Dated this 11th day of December, 1941.

Calvin W. Everson, Foreman."

On December 12, 1941, judgment against defendants in favor of plaintiff in the sum of $2500.00 and costs and disbursements was entered pursuant to said verdict.

No appeal was taken therefrom.

On the 22nd day of December, 1941, each of the defendants filed a petition in bankruptcy in the District Court of the United States for the District of Oregon. In the schedule of creditors and liabilities filed in said bankruptcy proceedings by each of the defendants said judgment in favor of plaintiff was listed. On February 26, 1942, defendant Harvey Baker obtained his discharge in bankruptcy. On March 6, 1942, defendant, Mary Baker, obtained her discharge in

bankruptcy and on March 9, 1942, defendant Dean Baker obtained his discharge in bankruptcy.

On March 31, 1943, defendants filed herein a motion for an order directing the clerk of the trial court to enter a satisfaction of plaintiff's said judgment.

On April 13, 1943, plaintiff filed the affidavit of her guardian *ad litem,* Orville G. Jaco, in opposition to defendants' last mentioned motion.

On April 26, 1943, defendants filed a motion "for an order to strike from the files plaintiff's motion opposing defendants' motion directing the clerk to satisfy judgment."

On May 27, 1943, an order was duly made by the circuit court denying defendants' motion, which said order was entered on May 28, 1943.

On June 7, 1943, defendants filed a motion to set aside the order of May 27, 1943, entered as aforesaid on May 28, 1943; and for a new trial or hearing on all matters adjudicated or covered by said order.

On August 11, 1943, an order was duly made by the circuit court, and entered on August 12, 1943, denying defendants' motion to set aside the order of May 27, 1943, and for a new trial.

The basis for defendants' appeal is the alleged error of the trial court in denying defendants' motion to strike the affidavit of plaintiff's guardian *ad litem,* in denying their motion for an order directing the clerk to enter an order satisfying plaintiff's judgment, and in denying their motion for a new trial of the questions presented by said motions so denied.

There are five assignments of error. The first is based upon the denial of defendants' motion to strike from the files the affidavit of Orville G. Jaco in

opposition to defendants' motion for an order directing the clerk to enter a satisfaction of plaintiff's judgment.

■ The trial court disregarded the statements made in Mr. Jaco's affidavit and treated it merely as a motion in opposition to the motion of defendants. Whatever may be said with reference to opposing a motion by another motion, it is manifest that the error, if any, in refusing to strike the affidavit was harmless.

The effect of the remaining four assignments of error is to present the basis for defendants' contention that an order should have been made directing and authorizing the clerk of the trial court to enter an order discharging plaintiff's judgment because in the bankruptcy proceedings defendants and each of them had been discharged as stated.

The provision of the bankruptcy act pertinent to the question thus presented is that—

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * * (2) are liabilities * * * * for willful and malicious injuries to the person or property of another." Title 11, chapter 3, section 35, U. S. Code.

■ The precise question, therefore, is whether the harboring by defendants of a dog known by them to be vicious is a willful and malicious course of conduct inflicting injuries upon plaintiff, the immediate cause of such injuries being the biting of plaintiff by the dog so harbored by defendants.

"The gist of the action for injury by a dog known by its owner to be vicious is generally said

to be not negligence in the manner of keeping the dog, but for keeping it at all. The action is founded upon the theory of maintenance of a nuisance rather than upon negligence." 3 C. J. S. Subject: Animals, pp. 1256, 1257, (Sec. 151a, and authorities cited in notes 30 and 31.)

There are authorities to the contrary holding that the gist of the action is negligence in not keeping the animal secure, which, however, is presumed whenever the animal is permitted to inflict injury on another. 3 C. J. Subject: Animals, pp. 90, 91, and authorities cited in note 49.

The weight of authority and the better reasoning support the principle above quoted from 3 C. J. S., supra.

Nearly 200 years ago an English court entered of record the following ruling:

"The Chief Justice ruled, that if a dog has once bit a man, and the owner having notice thereof keeps the dog, and lets him go about, or lie at his door; an action will lie against him at the suit of a person who is bit, though it happened by such persons treading on the dog's toes, for it was owing to his not hanging the dog on the first notice. And the safety of the King's subjects ought not afterwards to be endangered. The *scienter* is the *git* of the action." Smith vers. Pelah, Vol. II, Strange's Reports, 1263.

■ "Malice in common acceptation, means ill will against a person; but in its legal sense it means a wrongful act, done intentionally, without just cause or excuse." Bromage v. Prosser, 4 Barn. & C. 247, quoted and approved by Mr. Justice Peckham in Tinker v. Colwell, 193 U. S. 473, 24 Sup. Ct. 505, 48 L. Ed. 754.

■ "In order to come within that meaning as a judgment for a wilful and malicious injury to per-

son or property, it is not necessary that the cause of action be based upon special malice, so that without it the action could not be maintained." * * * * "A wilful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously, so as to come within the exception." Tinker v. Colwell, supra, quoted with approval in McIntyre v. Kavanaugh, 242 U. S. 138, 37 Sup. Ct. 38, 61 L. Ed. 205.

■ To determine the question whether or not plaintiffs judgment is based on a willful and malicious injury within the meaning of the bankruptcy act, we have recourse to the record, namely, the complaint, answer, instructions of the court, the verdict and the judgment. Vol. 7, Remington on Bankruptcy, (5th Ed.) p. 812, sec. 3551; *Fleshman v. Trolinger*, 18 Tenn. App. 208, 74 S. W. (2d) 1069; *In re Wegner*, 88 F. (2d) 899; *In re Minsky*, 46 Fed. Supp. 104; *Panagopulos v. Manning*, 93 Utah 198, 69 P. (2d) 614.

■ We think that under the allegations of the complaint, the cause of action asserted by plaintiff is within the category of a willful and malicious injury as that term is employed in the bankruptcy act. The action is predicated upon a willful and intentional act, namely, the keeping of a vicious dog with knowledge of its viciousness. In this aspect as a matter of law, the willful and malicious character of the act is implicit in the cause of action asserted. No recovery at all could be had without proof of the keeping by defendants of such an animal with knowledge of its vicious propensities. *Humphreys v. Heller*, 283 N. Y. S. 915, 157 Misc. 568; *Yackel v. Nys*, 258 App. Div. 318, 16 N. Y. S. (2d) 545.

■■ We have not overlooked the fact that the trial judge instructed the jury that punitive or exemplary damages could not be awarded. The element of malice would seem to warrant a consideration by the jury whether punitive damages should be awarded, but in no case is such an award imperative. That question when submitted to the jury is entirely within the discretion of the jury. That is not so, however, with regard to whether scienter or knowledge of the vicious propensity of the dog must be proven. Unless scienter is proven, no recovery is justified. *Schnell v. Howitt,* 158 Or. 586, 76 P. (2d) 1130.

Taking the pleadings, the instructions as a whole, the verdict and the judgment, we hold that plaintiff's claim thereunder is within the exception because it is a debt for willful and malicious injuries to her person, and therefore not dischargeable in bankruptcy.

■ To the point that the burden of proving that the judgment is not barred by the discharge in bankruptcy rests upon respondent, defendants cite: *Hill v. Smith,* 260 U. S. 592, 67 L. Ed. 419, 43 Sup. Ct. 219; *Greenfield v. Tuccillo,* 129 Fed. (2d) 854 and *Money Corporation v. Draggoo,* 274 Mich. 527, 265 N. W. 452. That rule not being disputed, further analysis of the three citations just given is unnecessary.

Defendants cite the following cases wherein recovery of damages was had for injuries sustained in automobile accidents: *Fleshman v. Trollinger,* supra; *Panagopulous v. Manning,* supra; *Ely v. O'Dell,* 146 Wash. 667, 264 P. 715, 57 A. L. R. 151; *In re Vena,* 46 F. (2d) 81; *In re Wegner,* supra.

These five cases are based upon negligence and it is held that the mere negligent operation of an automobile is not such a course of conduct as to imply

malice; hence, judgments based upon such negligence alone are barred by a discharge of the judgment debtor in bankruptcy.

*Greenfield v. Tuccillo,* supra, is also cited by defendants.

We quote from the opinion:

"The creditor had the burden of showing that his claims came within the exception of Section 17, subdivision 2, of the Bankruptcy Act, which would save it from the effect of a discharge. Yackel v. Nys, 258 App. Liv. 318, 321, 16 N. Y. S. 2d 545; Tompkins v. Williams, 137 App. Div. 521, 522, 122 N. Y. S. 152, affirmed 206 N. Y. 744, 100 N. E. 1134. The dischargeability of the claim is not to be settled by the form of the complaint but resort may be had to the entire record to determine whether they fall within the exception. In re Hammond, 2 Cir., 98 F. 2d 703; Bank of Williamsville v. Asherst Motor Sales, 234 App. Div. 261, 263, 254 N. Y. S. 825; Matter of Barbery v. Cohan, 183 App. Div. 424, 427, 170 N. Y. S. 762. If the record does not disclose the nature of the claim it may be proved aliunde. Swig v. Tremont Trust Co., 1 Cir., 8 F. 2d 943, 945; Gleason v. Thaw, 3 Cir., 185 F. 345, 347, 34 L. R. A. (N.S.) 894; Bannon v. Knauss, 57 Ohio App. 288, 13 N. E. 2d 733.

Under the circumstances disclosed, we cannot say whether the claims might not be barred by a discharge. The solution depends on whether the story of the bankrupt that the injuries resulted from inadvertence and negligence without intentional wrong is true, or whether the objecting creditor's story that it resulted from a deliberate disregard of known duty is the correct version. We think the issues of fact should be tried out in the state court after the determination of the discharge and that until then the stay originally granted should stand. This is the most approved practice except in cases where special embarrassment arises from such

procedure. Local Loan Co. v. Hunt, 292 U. S. 234, 54 S. Ct. 695, 78 L. Ed. 1230, 93 A. L. R. 195; In re Byrne, 2 Cir., 296 F. 98.''

In these automobile cases the willful and malicious character of the act is not ''implicit in the cause of action asserted'' as in the case of keeping a vicious animal knowing its vicious propensity.

The same distinction obtains between the case at bar and the following cases cited by defendants:

*Cogswell v. Kells,* 293 Mich. 541, 292 N. W. 483, an action for injuries received from the discharge of a rifle; *Panchula v. Kaya,* 59 Ohio App. 556, 18 N. E. (2d) 1003, being for accidental death caused by firing a bullet across a public highway at a target; *Damato v. Ambrose,* 122 N. J. L. 539, 6 Atl. (2d) 189, failure of insurance broker to remit premium furnished by plaintiff for a workman's compensation policy by reason of which failure plaintiff suffered loss.

*Gleason v. Thaw,* 236 U. S. 558, 59 L. Ed. 717, 35 Sup. Ct. 287, being a claim for attorney's fees, where the attorney was induced to perform the services by the misrepresentations of the bankrupt, is based upon the principle that an attorney's services are not property within the meaning of the provision of the bankrupt act which excepts from the general release of a discharge ''liabilities for obtaining money by false pretenses or false representations.''

*Kreitlein v. Ferger,* 238 U. S. 21, 59 L. Ed. 1184, 35 Sup. Ct. 685, holds that a judgment in a suit in the nature of trover for the recovery of goods purchased by defendant when insolvent, wherein special findings showed absence of fraudulent concealment or misrepresentation as to defendant's financial status, is barred by discharge in bankruptcy.

■ In *Tinker v. Colwell,* supra, and *McIntyre v Kavanaugh,* supra, the United States Supreme Court has given to the term malicious as used in section 35 of the bankrupt act the same meaning as that which this court has ascribed to the term malice for which punitive damages may be awarded.

The propriety of awarding punitive damages was under consideration by this court in a case where defendants were shown to have cut holes in a bridge on a public street in Portland and left them insecurely covered by reason of whereof plaintiff was thrown from his wagon in attempting to cross such bridge and was injured.

We quote from the opinion:

"The rule which allows the assessment of damages of that nature is stated by Mr. Justice Strahan (in Day v. Holland, 15 Or. 464, 469, 15 Pac. 858), as follows: 'Where a tort is committed with a bad motive, or so recklessly as to imply a disregard of social obligations, and generally when the defendant appears to have done the act wantonly, maliciously, or wickedly, the jury may, in their discretion, give exemplary damages.' The instruction given was in harmony with the rule, and we think, was applicable under the evidence. It was, in effect, left to the jury to determine whether the defendants had proceeded without regard to public rights, and with such carelessness and recklessness as to imply a disregard of social obligations. If such was the case, aggravated damages might be properly assessed." *Hamerlynck v. Banfield,* 36 Or. 436, 59 P. 712.

In *Rennewanz v. Dean,* 114 Or. 259, 229 P. 372, the following rule is quoted in *Searcy v. Golden,* 172 Ky. 42, 188 S. W. 1098:

"The rule is that punitive damages can be allowed for negligence only where the evidence shows

recklessness or indifference to the safety of others, or where the injury is malicious or wanton, or the negligence is gross'' [Citing authorities.] ''And it has been further said that to warrant punitive damages, the injury need not result from an intentional wrong; a showing of reckless conduct, or such gross negligence as to indicate a wanton disregard of others, being sufficient.''

The same rule is recognized in *Gill v. Selling,* 125 Or. 587, 591, 267 P. 812, 58 A. L. R. 1556.

We refer to the construction thus given to the term malice by this court because defendants cite the case of *Rogers v. Doody,* 119 Conn. 532, 178 Atl. 51, wherein it is held that to come within the exception barring release by virtue of a discharge in bankruptcy, because of the willful and malicious nature of the injury upon which the excepted claim is based such injury must have been prompted by design, purpose to do wrong and to inflict the injury; and that a judgment based upon the reckless disregard of the rights of others does not involve intentional wrongdoing and hence from such a judgment the judgment debtor was released by his discharge in bankruptcy.

While this court heretofore has not had occasion to construe the language of that part of section 35 of the bankruptcy act, above quoted, by analogy, it is a fair assumption that such construction would not differ from the construction given to the same term in the cases wherein the propriety of awarding punitive damages was under consideration. That construction conflicts with the doctrine of *Rogers v. Doody,* supra. As we understand the construction given by the high federal court to the clause of section 35 of the bankruptcy act now under consideration, it also is in con-

flict with the doctrine announced in *Rogers v. Doody,* supra.

We still bear in mind that the trial judge withheld the issue of punitive damages from the jury; but we think that by the first instruction herein quoted the trial court expressly recognized the character of the act which is implicit in the cause of action asserted, namely, the keeping of a vicious dog with knowledge of its vicious propensity; and certainly neither the trial court nor this court could change the character of that act. There is nothing to indicate that the testimony was construed as changing it.

The judgment order of the circuit court from which this appeal has been taken is affirmed.