Argued February 17, reversed and remanded March 4,
petition for rehearing denied March 25, 1953

# HUNT *v.* HAZEN, as Administrator
## 254 P. 2d 210

*Walter J. Cosgrave,* of Portland, argued the cause for appellant. With him on the brief were Maguire, Shields, Morrison & Bailey, of Portland.

*Paul J. Jolma,* of Clatskanie, argued the cause and filed a brief for respondent.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN and PERRY, Justices.

PERRY, J.

This is an action for damages brought by the plaintiff Clara Hunt to recover from the defendant G. L. Hazen, as administrator of the estate of Gertrude A. Hattan, deceased.

The plaintiff sustained personal injuries when she was bitten by a dog, admittedly vicious. The dog had been owned and kept by Mr. Hattan, who predeceased his wife, the defendant's intestate, by a month or two. The question submitted for determination by the jury was whether or not the defendant's intestate was at the time of the injury the owner, keeper, or harborer of the dog.

After the parties had rested, the defendant moved the court for an order directing a verdict on his behalf. Upon denial of the motion and an adverse verdict by

the jury, the defendant appealed, assigning such denial as error.

■ There is no statute in this state fixing liability for injuries to a human being suffered by the actions of a vicious dog. The determination of the question of the person or persons liable for injuries so suffered rests with the common law.

■ The gist of an action for damages by a vicious dog, whose propensities are known, is not negligence in the manner of keeping the dog; it is keeping the dog at all; and, the action is founded upon the theory of maintenance of a nuisance, not negligence. *Jaco v. Baker,* 174 Or 191, 148 P2d 938.

> "* * * The essence of the action is not ownership, but the keeping and harboring of an animal, knowing it to be vicious. One who keeps a savage dog is bound to secure it against its doing mischief. Vide Quilty v. Battie, supra; Oakes v. Spaulding, 40 Vt. 347, 94 Am. Dec. 404; Smith v. Royer, 181 Cal. 165, 183 P. 660; McClain v. Lewiston Interstate Fair & Racing Ass'n, 17 Idaho 63, 104 P. 1015, 25 L. R. A., N. S., 691, 20 Ann. Cas. 60; Lanna v. Konen, 119 Conn. 646, 178 A. 425." *Barber v. Hochstrasser,* 136 NJL 76, 54 A2d 458, 460.

Thus, the responsibility to respond in damages depends not upon who has legal title to the dog but rather upon the possessor of the animal.

As stated in Ingham, Law of Animals, p 405, § 96:

> "* * * the person liable for an injury committed by an animal is the owner or, if the animal is not in his possession, its harborer or keeper."

The rule is stated in 3 Restatement of the Law, Torts, p 22, § 509, as follows:

> "* * * the possessor of a dog known by him

to be vicious is liable for harm caused by it although he has exercised the utmost care to prevent it. * * *"

In 1 Restatement of the Law, Torts, p 551, § 216, the following is stated:

"* * * a person who is in 'possession of a chattel' is one who

"(a) has physical control of a chattel with the intent to exercise such control on his own behalf, or, otherwise than as servant, on behalf of another, or

"(b) has been in physical control of a chattel with intent to exercise such control, although he is no longer in physical control, if

(i) he has not abandoned it, and

(ii) no other person has obtained possession as stated in Clause (a), or

"(c) has the right as against all persons to the immediate physical control of a chattel, if no other person is in possession as stated in Clauses (a) and (b)."

It is therefore unnecessary to determine in this case whether or not, under the evidence hereinafter set out, the defendant's intestate made a gift of the dog for the purpose of determining title ownership.

The sole question, therefore, to be determined is whether or not Mrs. Hattan was keeping or harboring the dog at the time of the injury.

■ Since we are considering the motion for a directed verdict after a verdict of the jury for the plaintiff, we must consider the evidence with all of its intendments in a light most favorable to the plaintiff and determine whether or not there is any substantial evidence to support the verdict.

The doctor who treated the plaintiff lived about a block or a block and one-half from the Hattan residence

and saw the dog at one time on his neighbor's lawn. He also saw the dog out in the country. Mrs. Staley, who was a neighbor of Mrs. Hattan, saw the dog frequently around the Hattan place. Another neighbor of the Hattans noticed the dog on the street or in the yard near the Hattan home and on one occasion had observed Mrs. Hattan in the yard with a tray of food calling the dog, trying to get it into the yard.

The burden of proof was upon the plaintiff, and it does not appear from the evidence when Mrs. Hattan was attempting to feed the dog, whether before or after the following incidents testified to by Mr. Adams:

"Q. Was this dog ever brought up to your place? A. Yes.

"Q. When? A. Oh it would be February, I imagine; the last of January or February, first of February.

"Q. Was that before or after Mr. Hattan died? A. After.

"Q. At whose request was it brought up to your place? A. Well, I was in Clatskanie one day and I met Mrs. Hattan on the street and she said they were going to have the dogs killed and I said, told her I would like to have the dog if I could keep the dog so that day sometime, Mrs., Miss Hattan must have had somebody bring it up because they brought it up—when I came home that night my wife said the Hattan dog had been brought up but had gone back to Hattans.

"Q. How many times was the dog brought up to your place? A. I believe three times.

"Q. How many times did you request that it be brought up there? A. I never requested that it be brought up; I just made the statement one time I would like to have the dog if I could keep it.

\* \* \* \* \*

"Q. The first time they took it up, they tied it up and it chewed the rope and went back to the Hattan place. A. I think that is the way it is.

"Q. And then you enlarged the pen for it, did you not? A. No, well, not then, I didn't. Later I did, the last time.

"Q. A little later you enlarged the pen to see if that would keep it in? A. Well, I had a pen and I just put a piece of aluminum in the top; that is all I did.

"Q. To raise the height of it? A. No, to keep him from—it was a wire fence.

"Q. So that he couldn't get hold of it to get out? A. Yes, that is right.

"Q. About how high was the pen? A. Oh it must have been six or seven feet.

"Q. And she got out of that pen then? A. Yes.

"Q. And went back again and that was the last time she got out, she got out of the pen, did she not? A. Yes."

The conversation with Mr. Adams and the removal of the dog to his premises, a mile and one-quarter away, all took place prior to the injury complained of by the plaintiff.

A "keeper" is defined as "a person who keeps; one who watches, guards," etc.; "one having custody." Webster's New International Dictionary, 2d ed.

" 'Harboring' means protecting, and one who treats a dog as living at his house, and undertakes to control his actions, is the owner or harborer thereof, as affecting liability for injuries caused by it. Wood v. Campbell, 132 N. W. 785, 28 S. D. 197; McClain v. Lewiston Interstate Fair & Racing Ass'n, 104 P. 1015, 1017, 1026, 17 Idaho 63, 25 L. R. A., N. S. 691, 20 Ann. Cas. 60, quoting and adopting definition in 2 Cyc. p. 379." 19 Words and Phrases, Perm ed, p 65.

■ Keeping and harboring both necessarily imply *an intent* to exercise control over the animal and to provide food and shelter of at least a semi-permanent nature. To hold otherwise would make a person liable for injuries caused by animals attracted to their premises, through no overt act on the part of the householder; likewise a meal of mercy to a stray dog might lead to liability.

"* * * The law does not require the owner or occupant of premises to eject every dog that may be or may come upon them, at the risk, unless he does so, of being adjudged its keeper." *Whittemore v. Thomas,* 153 Mass 347, 26 NE 875, 876.

■ All the evidence in this case conclusively shows that there was no intention by Mrs. Hattan to either keep or harbor the dog. Every act attributed to her is quite the contrary. She threatened to have the dog killed. Mr. Adams offered to take the dog, and, on the occasion of each escape of the dog from the custody of Adams, she caused the dog to be returned. She was at all times endeavoring to rid herself of any care or control. The most that can be said for the plaintiff's case is that the dog, with its animal propensities, kept returning to the home of her former master and against the wishes of Mrs. Hattan.

We are of the opinion that the evidence in this case was insufficient to raise a question of fact as to Mrs. Hattan's keeping or harboring the dog, and the motion for a directed verdict should have been sustained.

The defendant complains of other errors in the trial of this cause, which, under the view taken by this court, are unnecessary to consider.

The cause is therefore reversed and remanded with instructions to enter judgment for the defendant.