Argued October 1, 1963, affirmed January 15, 1964

## RUSSELL *v.* CONGREGATION NEVEH ZEDECK
### 388 P. 2d 272

*William A. Babcock,* Springfield, and *William W. McGeorge,* Portland, argued the cause and submitted briefs for the appellant.

*Leo Levenson,* Portland, argued the cause for respondent. With him on the brief were Paul R. Meyer and Kobin & Meyer, Portland.

Before McAllister, Chief Justice, and Rossman, Sloan, Goodwin and Lusk, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff from a judgment of involuntary nonsuit which the circuit court entered in the defendant's favor upon the defendant's motion at the close of the plaintiff's presentation of his evidence in chief. The plaintiff is the administrator of the estate of William A. Illidge, deceased, who, at the time of his death, was the owner of a parcel of Portland real property which the defendant deemed a desirable site for a synagogue which it planned to erect.

March 25, 1959, the plaintiff and the defendant signed a document entitled "Agreement For Sale of Real Property" in which the plaintiff bound himself "to grant a fee simple title to said property free of all encumbrances to the Congregation Neveh Zedeck for the sum of $35,000 cash * * *" and the defendant agreed "to buy the above described real property for the sum of $35,000 cash." Those provisions were succeeded by the following:

"That said sale is specifically conditioned upon the Congregation Neveh Zedeck's ability to obtain the required approval of the Municipal, County, State and other governmental agencies required for the use of said property for the contemplated church purposes."

The agreement also provided:

"That the Congregation Neveh Zedeck agrees forthwith to take all necessary action to obtain the approval required for said use of the described property and to pursue said action with diligence until said approval is either obtained or absolutely denied."

The contract gave the congregation fourteen weeks in which to obtain the required approval but recognized in the plaintiff power to extend the time.

The complaint alleged that March 25, 1959, the parties hereto entered into the contract which we have mentioned. The contract is made a part of the complaint. Next the complaint avers:

> "That the defendant, Congregation Neveh Zedeck, failed and refused to pursue its application for approval of the use of said land for church purposes."

The words just quoted constitute the entire fourth paragraph. The complaint does not mention any particulars in which the defendant failed "to pursue its application for approval of the use of said land for church purposes," nor does it cite anything that the defendant left undone. No other purported breach of the agreement is alleged. No averment is made that the defendant did not purchase the property. The Fifth, being the last paragraph of the complaint, says:

> "That as a result of said failure and refusal by the defendant, plaintiff was damaged in that the sale price of said property under the contract between the parties was $35,000.00 and that at the time of defendant's breach of said contract, the reasonable market value of said property was $25,000.00."

No allegation is made that the defendant's alleged failure to secure the approval of the state and municipal bodies for the use by the defendant of the site for the contemplated church purposes was detrimental to the value of the property, and, if detrimental, the extent of the injury. The prayer demanded judgment for $10,000. No averment charges that the purported

decline in the value of the property from $35,000 to $25,000 was caused by the purported failure of the defendant to have obtained approval for the erection of a synagogue on the site. In other words, no averment was made that a relation of cause and effect existed between the defendant's failure to gain the city's approval of the defendant's proposed use of the property and the decline in the property's market value.

A demurrer challenged the sufficiency of the complaint as the statement of a cause of action. When it was overruled, the defendant filed an answer which admitted the plaintiff's status as administrator, the defendant's status as a corporation, and the signing of the contract. All other parts of the complaint were denied. The answer set forth seven affirmative defenses. It alleged that the defendant "proceeded with diligence to obtain the approval of the municipal, county, state, and other governmental agencies required for the use of the real property for the contemplated purposes of erecting a synagogue." Further, the answer averred:

"In the course of attempting to obtain approval of the City of Portland, there was tempestuous opposition to the use of the property for the contemplated synagogue by more than 73 persons who resided in the neighborhood, constituting substantially all the residents in the immediate vicinity. Said persons signed and filed petitions and remonstrances with the City Council and retained counsel to represent them and to take all steps available to prevent the use of the property for the contemplated synagogue."

The answer also set forth:

"In addition to the aforementioned petitions, remonstrances and opposition, the officers and

members of defendant Congregation were subjected to vicious and continued threats of violence to their persons and property and to the persons of their families if the property were used for the contemplated synagogue."

The answer alleged that August 26, 1959, the city council "laid on the table defendant's application for permission to construct a synagogue and Sunday school on the real property involved."

Since the agreement was signed March 25, 1959, five months were consumed by the defendant's effort to gain approval of the property as the site of a religious edifice.

We have mentioned that the defendant's answer submitted seven affirmative defenses. The defenses included a contention, based upon ORS 116.755, 116.810, and related sections, that the plaintiff should have secured from the Probate Court approval of the aforementioned agreement and should have posted the additional undertaking mentioned in those sections of our laws. The defendant averred that the plaintiff failed to comply with those statutory provisions and that therefore the agreement was nothing but an offer or bid. In his brief filed in this court the plaintiff states:

"Most of these defenses were irrelevant to the narrow issue of the breach of contract alleged in the complaint and insufficient in law as defenses to the action. The attention given to the alleged deficiencies and omissions in the probate proceedings, both in the pleadings and trial, served to divert the attention of the court from the only genuine issue presented: that of breach of defendant's promise to use due diligence to secure governmental approval for use of the property for a church."

Thus, we see that the purported breach of the con-

tract upon which the plaintiff relies was the defendant's failure to have secured the city's approval of the property as the site for a synagogue. The plaintiff, in the language just quoted, declares that that alleged breach constituted "the only genuine issue presented." The brief of his counsel also states:

"Point 2. The breach by defendant of its promise to use diligence in securing the city's approval of the contemplated land use, was a breach of the entire contract and made defendant liable in damages for such breach."

In the trial the plaintiff presented evidence which he claimed established that (1) the defendant had not pursued with diligence its application for permission to use the property as the site of a synagogue and (2) until the defendant secured permission to make the contemplated use of the property, the plaintiff was not required by ORS 116.755, 116.810, and related sections to gain the approval of the Probate Court and file an additional undertaking.

■ We cannot deduce from the record the exact basis of the trial judge's ruling which sustained the defendant's motion for an involuntary nonsuit. However, it is immaterial whether the trial court gave the right reasons for sustaining the defendant's motion if his action was right upon any ground: *Hudson v. Goldberg,* 123 Or 339, 262 P 223; *Oregon Mutual Fire Ins. Co. v. Mathis,* 215 Or 218, 334 P2d 186; *Marchant v. Clark,* 225 Or 273, 357 P2d 541; *Short v. D. R. B. Logging Co.,* 192 Or 383, 232 P2d 70, 235 P2d 340; *Shultz v. Monterey,* 232 Or 421, 375 P2d 829; 5 CJS, Appeal and Error, p. 675, § 1464 (4). But whether the trial judge's reasons were right or wrong, it will be noticed that the plaintiff insists that he seeks damages not on account of the defendant's failure to purchase the

property, but because the defendant did not pursue diligently its efforts to secure approval for church use of the property.

Mr. William A. Bowes, a commissioner of the City of Portland and a member of its City Council, as a witness called by the plaintiff, testified that the defendant, in order to use the property as the site of a religious structure, was not required to obtain a zone change but was required only to secure the council's approval of the defendant's planned use of the property. His testimony is unchallenged and unquestioned. He testified, "the location of a school, a church, or a hospital could be located in any zone  *  *  *. Those matters are subject to council approval, not zone changes." The evidence indicates that problems that arise out of traffic, disturbance to the peace, fire hazard, public health, and general welfare are the ones that are resolved in determining whether the council should lend its approval to an application such as the one which the defendant filed.

The site in question consisted of several contiguous lots upon which there stood an old mansion, twenty rooms or more in size. Unoccupied, it had become the victim in recent years of acts of vandalism and its grounds had been neglected. The surrounding area was improved with homes of superior quality that were well maintained.

When the council proceeded July 1, 1959, to give the defendant's application a hearing, the plaintiff and his counsel were present; the defendant and its counsel were likewise present; and the remonstrators were represented by Mr. Jonathan Edwards, an attorney who lived in the neighborhood.

The minutes of its meeting of July 1, 1959, indicate that when the council met on that day the City

Planning Commission reported that it had given its approval to the defendant's application for the construction of a synagogue and Sunday school upon the site in question. Later the city traffic engineer, at the request of the council, investigated the possible effect upon traffic in the neighborhood of this property if the synagogue were built. He reported to the council that he had found nothing to justify a denial of the application. Thus far the defendant had met with success.

We have read all the evidence that the plaintiff presented in support of its contention that the defendant failed to pursue its application with due diligence. The evidence shows that partly, at least, as a result of the defendant's efforts, many supporters of the application came before the city council and spoke in favor of the application. These supporters called to their avail many reasons and interests in support of the stand that they took. The record shows nothing whatever that the defendant failed to do which, if done, would have aided its application. Further, the record shows that at the session of the council which laid the application on the table the defendant's president, in response to a question of a member of the council, stated that the congregation wished the council to pass upon the merits of its application.

■ The plaintiff appears to believe that the defendant lost interest in this site when determined opposition to its application developed. We are aware of no justification for that point of view. It submitted its case to the city council. It never retreated from its application, but, to the contrary, asked for a decision on the merits. It could have done nothing more.

The judgment is affirmed.