Argued July 10, 1967, affirmed January 31, 1968

BORDEN, *Appellant, v.* CITY OF SALEM, *Respondent.*

436 P. 2d 734

*F. P. Stager,* Salem, argued the cause and filed a brief for appellant.

*Ted E. Barbera,* Assistant City Attorney, Salem, argued the cause for respondent. With him on the brief was William J. Juza, City Attorney, Salem.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, HOLMAN and LUSK, Justices.

McALLISTER, J.

The plaintiff brought this action to recover damages allegedly sustained when she was attacked by a dog used by the police department of the City of Salem in law enforcement work. The trial judge granted a

nonsuit on the ground that the dog was being used in the performance of a governmental function. Plaintiff appeals.

Viewed in the light most favorable to the plaintiff the evidence tends to prove the following facts. Plaintiff with her husband and a party of relatives and friends, after spending the evening at a tavern, went to the China Cafe in Salem early on a Sunday morning in April, 1966. At about 3:00 a.m. the management called the police to evict plaintiff's husband and his nephew from the restaurant because their conduct was "out of the way." During the arrest there was a commotion in front of the restaurant and a crowd gathered. While the plaintiff was standing on the sidewalk in front of the restaurant near a patrol car into which the police were putting her husband, a police dog leaped upon her, spun her around, pinned her against the wall, tore her blouse and bit her on the right shoulder. The dog had been brought to the scene on leash by police officer Ziebert from another patrol car parked in the vicinity.

The plaintiff first contends that the court erred in granting the nonsuit because the city had waived its governmental immunity by failing to plead it. It did not appear from plaintiff's complaint that the dog was being used in law enforcement work at the time of the alleged attack on plaintiff. The defense of governmental immunity, therefore, could not be raised by demurrer, but only by answer. The city did raise the defense by pleading in its answer the ultimate facts from which governmental immunity is implied as a matter of law, i.e., its status as a municipality and the use of the dog at the time of the alleged attack as an aid in the governmental function of law enforcement. It was not necessary to allege the legal conclusion that

the city was immune.[1] We find no merit in the first assignment of error.

■ The plaintiff also contends that the court erred in granting the nonsuit because the use of a vicious dog with knowledge of its vicious propensities is a nuisance, and the city is not immune from liability for nuisance. The law is well settled that a person who keeps a vicious dog with knowledge of its vicious propensities is liable for harm caused by the dog, although he has exercised the utmost care to prevent it. Liability is based on the creation or maintenance of a public nuisance and does not depend on negligence. *Hunt v. Hazen, Adm.,* 197 Or 637, 639, 254 P2d 210 (1953); *Jaco v. Baker,* 174 Or 191, 198, 148 P2d 938 (1944); Anno. 79 ALR 1060, 1062 (1932); 4 Am Jur2d 312, Animals § 63 (1962); 3 CJS 1256, Animals § 151 (1936); Restatement of Torts § 509, comment f at 21 (1938).

■ It is also true that this court has held that even when acting in a governmental capacity cities are not immune from liability for harm caused by the maintenance of either a public or a private nuisance. *Levene v. City of Salem,* 191 Or 182, 197, 229 P2d 255 (1951); *Adams v. City of Toledo,* 163 Or 185, 191, 96 P2d 1078 (1939). The rule has been applied in an action for damages for personal injuries. *Wilson v. City of Portland,* 153 Or 679, 685, 58 P2d 257 (1936). See also, anno. 56 ALR2d 1415, 1419. Our cases are in harmony with the general rule. 18 McQuillin, Municipal Corporations (3d ed rev) § 53.49.

---

[1] "On any pleading the party making it is entitled to the benefit of any legal conclusion which may be properly drawn from the facts stated." Leadbetter v. Hawley, 59 Or at 427, 117 P at 506. See also, 41 Am Jur 300, Pleading § 16; 71 CJS 34, Pleading § 13.

Assuming that the jury could infer from the dog's conduct in jumping upon and biting plaintiff that the dog was vicious, we are unable to find in the record any evidence that defendant knew or should have known that the dog had vicious propensities. The only evidence concerning the prior conduct of the dog was the testimony of Officer Ziebert. He testified that he had been in charge of the dog since it was acquired by the city in February, 1965, that he kept the dog at his home except when it was with him on patrol, that he had two children who played with the dog, and that the dog had never bitten or injured anyone or displayed any temper or vicious propensities. The officer testified that the dog had been trained to attack on command, or if his master was attacked or threatened. The officer admitted that he had not ordered the dog to attack on this occasion; but if this was evidence of a vicious propensity, there is no indication that the dog had ever before been guilty of any breach of discipline or unordered attack on anyone. There is also no evidence that the training of the dog for police work had imbued it with any dangerous propensities.

The burden was on the plaintiff to prove both that the dog was vicious and that the defendant knew of the dog's vicious propensities. *Butler v. Pantekoek,* 231 Or 563, 568, 373 P2d 614 (1962). Since the plaintiff failed to prove the second element of her alleged cause of action, the trial court did not err in granting a nonsuit. It is immaterial whether the trial court gave the right reason for granting the nonsuit, if it should have been granted on any ground. *Russell v. Congregation of Neveh Zedeck,* 236 Or 291, 296, 388 P2d 272 (1964).

The judgment is affirmed.

O'CONNELL, J., specially concurring.

We have previously held that "Our Constitution is framed on the premise that the state is immune from suit and that if immunity is lifted it shall be done so by the action of the legislature."[1] As the majority opinion correctly points out, we have also held that "even when acting in a governmental capacity cities are not immune from liability for harm caused by the maintenance of either a public or private nuisance." The majority characterizes the conduct of keeping a dog with knowledge of its dangerous propensities as a nuisance. The majority assumes that if it had been proven that the dog kept by defendant in this case had dangerous propensities of which defendant was aware, defendant could not raise the barrier of governmental immunity.

The difficulty with this analysis is that we are not told what characterizes a nuisance or why the city is not entitled to immunity when a nuisance exists. The idea that a municipality is liable for the creation of a nuisance is described by Prosser as an "anomaly." He comments upon the anomaly as follows:

"* * * The origin of this seems to be found in the idea that the creation of a private nuisance amounted to a taking of land without compensation, or that the city, as a landowner, was necessarily a proprietor, and subject to the responsibilities of one toward other landowners. If this was the explanation, it was soon lost to sight when the principle was extended to public nuisances where neither consideration is involved. Since liability for nuisance rests in many cases upon nothing more than negligence, for which in theory the municipality is not liable, the result has been a rather hopeless

[1] Vendrell v. School District No. 26C, 226 Or 263, 278, 360 P2d 282 (1961).

attempt to distinguish between the two, which has added confusion to the law of both nuisance and municipal corporations. It seems reasonable to say that there is no sound argument behind the distinction itself, and that resort to the more or less undefined concept of nuisance is merely one method by which the courts have retreated from municipal nonliability." Prosser on Torts, § 125, pp. 1009-1010 (3d ed 1964).

The majority opinion contributes to this confusion by employing the nuisance concept to describe the conduct of one who keeps a dog knowing that it is vicious or that it has dangerous propensities.

When the nuisance label is removed we are better prepared to identify the problem which is presented in this case. The problem must be examined within the framework of the rules relating to the liability for keeping an animal whose dangerous propensities are known to the possessor. If, within the framework of these rules, the actor is not liable, it will be unnecessary to decide whether the city would be entitled to immunity if the facts were such as to make the rules of strict liability applicable. The majority opinion proceeds upon this basis in holding that there was not sufficient evidence to establish one of the elements of the rule of strict liability, namely, the possessor's knowledge of the animal's dangerous propensities. But this is done upon the assumption that if the officer had knowledge of the dangerous propensities of the dog, the city would be liable under the theory of the law of "nuisance," which, as I have demonstrated, is simply another way of describing the well-recognized tort of keeping animals known to be dangerous.[2] I

---

[2] Since the rule relating to the keeping of dangerous animals is but a part of the larger body of law imposing strict liability

disagree with the majority's assumption that the city would be liable simply because it had knowledge of the animal's dangerous propensities.

Even though an animal is dangerous, the utility in keeping him may be so great that strict liability is not imposed upon the possessor.[9] This is the import of Restatement of Torts, § 509, comment *e* (1933) in which it is explained that some animals such as bulls although having dangerous tendencies, "their usefulness in performing their function in the socially essential breeding of livestock, justifies the risk involved in their keeping."[10]

The principle that the utility may outweigh the risk has been applied in a number of cases involving

for conduct creating an unusual danger to the community (e.g., the handling and use of high explosives, collecting or bringing upon the land dangerous substances, etc.), a holding in the present case that the city does not have immunity would necessarily extend to the other situations in which strict liability has been imposed.

[9] In this class of cases, as in all cases in which strict liability is asserted, it is necessary to look not only at the risk which the defendant's conduct creates but also at the utility of that conduct, and the latter must be balanced against the former. The process of balancing is described in Prosser, Selected Topics on the Law of Torts (the Principle of Rylands v. Fletcher), p. 185 (1953), as follows:

"The unreasonableness of the risk is to be determined on much the same basis as in negligence cases, by balancing the probability and gravity of the harm threatened against the utility of the defendant's conduct, both to the defendant himself and to the community. The decision is, however, not left to the jury, but is always made by the court."

[10] The comment adds that "while a certain amount of danger is inseparable from the keeping of these socially essential or useful animals, there is no social value in keeping animals which are vicious or have other dangerous propensities which are in excess of those necessary for their utility and as such are abnormal to their class." Restatement of Torts, § 509, comment *e*, p. 21 (1933).

the keeping of animals.[8] I believe that the present case is brought within that principle. In my opinion the utility of a police dog in the important work of law enforcement with its benefit to the community outweighs the risk of harm. Therefore, I can find no justifiable reason for treating the conduct of defendant city in this case as giving rise to strict liability.[9] Whether the city would be immune from liability if the utility of its conduct did not outweigh the risk, we are not now required to decide.

Therefore, I would affirm the judgment for reasons different than those stated in the majority opinion.

GOODWIN, J., specially concurring.

I agree that the nomenclature of nuisance should be discarded in personal-injury actions for damages allegedly caused by a vicious animal. The Restatement language of strict liability is more accurate. Under either theory, however, an individual who keeps a vicious animal after having acquired knowledge of its propensities is strictly liable for resulting harms.

---

[8] The rule of absolute liability was held inapplicable to a defendant which kept animals in a park "where the animals were maintained as a public enterprise under legislative authority for educational purposes and to entertain the public." Guzzi v. New York Zoological Soc., 192 App Div 263, 266, 182 NYS 257, 259 (1920). In Connor v. Princess Theatre, 27 Ont Rep 466, 10 DLR 143, Ann Cas 1914A, 762, the rule of absolute liability was not applied where a trained monkey caused damage. The court balanced against the risk of harm the fact that trained animals "serve some purpose for the use of man." The court quoted from 2 Cooley on Torts § 411 (3d ed): "When wild animals are kept for some purpose recognized as not censurable, all we can demand of the keeper is that he shall take that superior precaution to prevent their doing mischief which their propensities in that direction justly demand of him." 69 ALR 509 (1930).

[9] See Barr v. District of Columbia, 202 F Supp 260, 262 (D.C. Cir 1962) (dictum).

*Hunt v. Hazen, Adm.*, 197 Or 637, 640, 254 P2d 210 (1953). There is no evidence in this case that the keepers of the animal had any reason to know that it might harm an allegedly innocent bystander. The nonsuit, accordingly, was correct on any theory.

I would affirm, however, for the reason given by the trial judge in the order of nonsuit: governmental immunity. The activity that gave rise to the alleged injury was that of a police officer maintaining order. Even if, upon another trial, the plaintiff can muster evidence that might support liability in an action against an individual, a city government ought to be immune from vicarious tort liability in connection with reasonable force employed in police work.

For the purposes of deciding whether or not governmental immunity ought to apply, it should make no difference whether the officer was using a dog, a tear-gas missile, or a night stick. Police work necessarily involves the risk that force will be required. Any police weapon, if used improperly, can seriously harm the citizen who finds himself in the area in which police action is taking place. This truism may account in part for the development of the rule of sovereign immunity. Characterizing the use of certain weapons as nuisances amounts to an end-run around governmental immunity in situations where immunity is intended to function.

If the focus of the inquiry is to be upon animals, outside the context of their use and of their custodians, it is possible to construct a theory for this case within the precedent framework of some of our earlier cases dealing with nuisances. If, on the other hand, the focus of inquiry is upon the city government and the activity out of which this controversy arose, the fact that the instrumentality causing the harm was an

animal does not appear to be of transcending importance.

The denial of immunity to government in cases properly brought under the law of nuisance does not offend the principles underlying governmental immunity. A private nuisance that substantially interferes with the enjoyment of property must be stopped, or paid for, under well-known constitutional principles. See, e.g., *Thornburg v. Port of Portland,* 233 Or 178, 376 P2d 100 (1962). A trespass, as by casting water on the land of the plaintiff, is not sheltered by immunity. *Levene et ux. v. City of Salem,* 191 Or 182, 190, 196, 229 P2d 255 (1951). But a pseudo-nuisance is another matter. Those personal-injury cases in other states which have, for the purpose of by-passing the immunity rule, haphazardly characterized negligent wrongdoing and intentional harms as public nuisances need not be perpetuated as precedent in this state. See cases collected in Annotation, 56 ALR2d 1415, 1419 (1957). On the other hand, those suits and actions which have allowed relief against cities in cases of true nuisance, such as flooding, permitting garbage to accumulate, and the like, are sound extensions of the principle that the government may not take private property for public use without payment. *Levene v. City of Salem,* supra; *Wilson v. City of Portland,* 153 Or 679, 58 P2d 257 (1936).

Whether or not sovereign immunity is a disfavored policy in a majority of the states is irrelevant in this state. See *Vendrell v. School District No. 26C et al,* 226 Or 263, 360 P2d 282 (1961). The employment of police officers to maintain order is precisely the sort of activity in which the government should engage without fear of *respondeat superior* liability. See cases cited in Prosser, Torts 1006 (3d ed 1964).

Whether the liability of an individual police officer who uses dangerous instrumentalities ought to be predicated upon notions of strict liability or of negligence, the trial court in this case properly held that the city, as a governmental body, was not liable under any theory.

HOLMAN, J., joins in this opinion.